**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2020**

# In the Court of Appeals of Georgia

A19A2123. FLEETWOOD et al. v. LUCAS.

COOMER, Judge.

This appeal involves a suit for breach of contract and quantum meruit filed by Scott Lucas against Xavier Fleetwood, Deidre Fleetwood, Brion's Trucking, Inc., and Jerry Evans (collectively, "Appellants"). Appellants contend that the trial court erred in denying their motion for summary judgment and in not entering a directed verdict in their favor based on OCGA § 43-41-17. For the reasons that follow, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

> In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe

the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.

*Swint v. Alphonse*, 348 Ga. App. 199, 199-200 (820 SE2d 312) (2018) (citation omitted). "[A] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1) (508 SE2d 646) (1998).

So viewed, the evidence shows that Xavier Fleetwood, the owner of Brion's Trucking, Inc., leases property on Moreland Avenue in Ellenwood, Georgia, from Jerry Evans. The Fleetwoods also own property on Shannon Drive. The Fleetwoods hired Lucas to perform work at the two properties. Lucas submitted proposals listing the work to be performed at the two properties. Lucas did not have a contractor license when he submitted the proposals. The scope of work for the Shannon Drive project was as follows:

> Dumpster for clean out & Demo.
> Demo bathroom tile both wall & floor, remove tub, vanity and toilet.
> Install new tub, toilet, vanity, bathroom hardware, tile both floor & shower walls, mirror or medicine cabinet all plumbing fixtures from the walls outward.

Demo kitchen cabinets, countertops, and old appliances. (keeping the island)

Install new plumbing fixtures from the wall out, countertops, cabinets, stove, dishwasher, garbage disposal, oven hood, tiling backsplash over countertops, dishwasher, sink, oven and refrigerator.

Sand & refinish floors, 3 coats and 1 top coat.

Demo 1 doors openings to complete walk thru opening.

Install alarm & camera. Plus additional material and swapping out old material if possible.

Paint inside all walls, doors and trim. (exterior & shed needs to wait until spring) (client signs off on colors)

Refitting all interior & exterior doors locks & door knobs.

Cut out and square up 63 holes for repair, sheetrock patching & plastering.

Refitting windows on upper level single hung (already purchased), refitting existing interior trim & saving exterior trim.

Items [that] will still need to be purchased and reimbursed Fridge, Oven and Wall & Floor Tiles.

Mr. Fleetwood paid a $4,000 deposit and made the first payment of $8,227 when he accepted the proposal for the Shannon Drive project. Mr. Fleetwood later made a second payment of $8,227. Mr. Fleetwood did not make the third payment of $8,227, which was due on completion.

An e-mail from Lucas to Mr. Fleetwood, which Lucas identified at trial as part of the contract for the Moreland Avenue property, lists the items Lucas was supposed to do at the Moreland Avenue property as follows:

$6,900 Guard house
$1,800 Fence move sides added
$8,600 Alarm & cameras
$10,600 Gate opener
$1,800 Toilets, vanities, mirror labor & materials
$2,200 Trenching conduit runs. to guard house low /high voltage & garage for cameras
$700 Kitchen countertops 2. new knobs. labor faucet install
$750 Electrical power to cameras & guard house
$33,550 Total
$16,500 Gravel & site prep

Mr. Fleetwood testified that he agreed to these items. After Lucas informed him that the project was over budget by about $10,000, Mr. Fleetwood asked Lucas to give him all of the receipts for the Moreland Avenue project. At that point, Lucas began preparing a series of spreadsheets that he presented to Mr. Fleetwood periodically showing the running totals of how much he had spent on the project.

Lucas filed a complaint against Appellants claiming that the Fleetwoods had retained his services to renovate the house on the Shannon Drive property, that he had

4

completed the renovation, and that the Fleetwoods owed him money as compensation for the renovation. Lucas also claimed that the Fleetwoods retained his services to renovate the office on the Moreland Avenue property, and that Jerry Evans agreed to have Lucas perform additional renovation work on the office. Lucas claimed that he had completed the renovation of the office, and that the Fleetwoods and Evans owed him money as compensation for the renovation. In the complaint, Lucas made claims for breach of contract and quantum meruit.

Appellants filed a motion for summary judgment, asserting that OCGA § 43-41-17 (b) bars unlicensed contractors from enforcing in law or equity a contract for the performance of work for which a license is required. Lucas filed a motion opposing summary judgment, arguing that he was not required to possess a contractor license to perform the services under the contracts with Appellants. In an affidavit filed with the motion opposing summary judgment, Lucas stated that he informed Mr. Fleetwood that he did not have a Georgia residential and general contractor license. The trial court denied Appellants' motion for summary judgment.

The case was tried before a jury in October 2018. After Lucas presented his case, Appellants moved for a directed verdict in their favor, again arguing that Lucas was barred from bringing suit because he did not possess a valid Georgia contractor

5

license when he entered into the agreements with the Appellants. Lucas opposed the motion for directed verdict, contending that the work he performed for the Shannon Drive property was repair work, so a license was not required, and that for the Moreland Avenue project, Mr. Fleetwood acted as the contractor and Lucas managed the project for him. The trial court asked whether Lucas ever notified Appellants that he had no license. Lucas was recalled to the stand and was asked if Mr. Fleetwood knew that Lucas did not have a contractor license. Lucas responded, "No, he did not know that." Lucas was asked whether there was ever any time that Mr. Fleetwood asked if Lucas had a contractor license. Lucas answered, "No, he'd never asked that question." Lucas testified that he never had a conversation with Mr. Fleetwood about Lucas having a contractor license, and there was never any written discussion between him and Mr. Fleetwood about Lucas having a contractor license. The trial court stated, "I'm not going to decide [the motion for directed verdict] right now. I'll let the defense put up his case. The court may reconsider, possibly following the defense's case and make its decision at that point in time." After the close of evidence, the trial court stated that it was intending to revisit the motion for directed verdict. However, the trial court held the charge conference and released the court reporter just after the charge conference. The transcript does not reflect whether the

6

trial court ruled on the motion for directed verdict. The jury returned a verdict in favor of Lucas, and the trial court entered judgment on the verdict. This appeal followed.

1. Appellants contend that the trial court erred in not entering a directed verdict in their favor. We agree.

Appellants contend that Lucas is barred from bringing this action by OCGA § 43-41-17 (b), which provides, in relevant part:

> any contract entered into . . . for the performance of work for which a residential contractor or general contractor license is required by this chapter and not otherwise exempted under this chapter and which is between an owner and a contractor who does not have a valid and current license required for such work in accordance with this chapter shall be unenforceable in law or in equity by the unlicensed contractor.

OCGA § 43-41-17 (a) provides that "no person, whether an individual or a business organization, shall have the right to engage in the business of residential contracting or general contracting without a current, valid residential contractor license or general contractor license[.]" Contracting, in turn, is defined in OCGA § 43-41-2 (3), in part, as "performing or causing to be performed any of the activities set forth in [OCGA § 43-41-2 (4).] The activities set forth in OCGA § 43-41-2 (4) include "for

7

compensation, contract[ing] to . . . perform[] . . . the construction or improvement of, addition to, or the repair, alteration, or remodeling of any . . . building . . . for use by the owner or by others or for resale to others."

However, OCGA § 43-41-17 (g) provides that:

> Nothing in this chapter shall preclude a person from offering or contracting to perform or undertaking or performing for an owner repair work, provided that the person performing the repair work discloses to the owner that such person does not hold a license under this chapter and provided, further, that such work does not affect the structural integrity of the real property.

OCGA § 43-41-17 (g) specifically provides that the State Licensing Board for Residential and General Contractors "shall by rule or regulation further define the term "repair" as used in this subsection and any other necessary terms as to the scope of this exemption." Rule 553-8-.01 of the Georgia Comprehensive Rules and Regulations defines "repair" "to mean fixing, mending, maintenance, replacement or restoring of a part or portions of real property to good condition."

Appellants contend that the exemption of OCGA § 43-41-17 (g) does not apply because the majority of the work done by Lucas was new construction work, not repair work. Appellants further contend that OCGA § 43-41-17 (g) does not apply

8

because Lucas did not disclose to them that he did not hold a contractors license. We agree. Even if all of the work done by Lucas was repair work, OCGA § 43-41-17 (g) does not apply because Lucas did not disclose to Appellants that he did not hold a contractor license. Although Lucas submitted an affidavit with his motion for summary judgment in which he stated that he informed Mr. Fleetwood that he did not have a Georgia residential and general contractor license, and that the Fleetwoods both knew that he did not hold a Georgia residential and general contractor license, he testified to the contrary at trial. Thus, the evidence presented at trial showed that Lucas, as a matter of law, did not qualify for the exemption in OCGA § 43-41-17 (g).

Lucas argues that Appellants failed to show that he was a contractor as defined by OCGA § 43-41-2 (4) because they failed to show that he bore any responsibility for any contractual risk to them for the performance and cost of the repairs on the projects. OCGA § 43-41-2 (4) defines "Contractor" as follows:

> "Contractor," except as specifically exempted by this chapter, means a person who is qualified, or required to be qualified, under this chapter and who, for compensation, contracts to, offers to undertake or undertakes to, submits a bid or a proposal to, or personally or by others performs the construction or the management of the construction for an owner of any building, bridge, or other structure, including a person who installs industrialized buildings as defined in paragraphs (3) and (4) of

9

Code Section 8-2-111, for the construction or improvement of, addition to, or the repair, alteration, or remodeling of any such building, bridge, or structure for use by the owner or by others or for resale to others. The term "contractor" for purposes of this chapter shall include a person who contracts to, undertakes to, or submits a bid or proposal to perform, or otherwise does himself or herself perform, for an owner:

(A) Construction management services relative to the performance by others of such construction activities where the person performing such construction management services is at risk contractually to the owner for the performance and cost of the construction; and

(B) Services of a contractor as part of performance of design-build services, whether as a prime contractor, joint venture partner, or as a subcontractor to a design professional acting as prime contractor as part of a design-build entity or combination.

OCGA § 43-41-1 et seq. "shall be liberally construed so as to accomplish the intent" of the General Assembly, which is "to safeguard homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, and unsafe residential and general contractors." OCGA § 43-41-1. Thus, we will not construe OCGA § 43-41-2 to mean that a person is a contractor *only* if he has contractual risk to the owner for the performance and cost of the construction.

Finally, Lucas argues that the Fleetwoods managed and directed the projects, and that he was merely a servant of the Fleetwoods. However, the record shows that Lucas entered into contracts with Appellants to perform services, including making repairs, for compensation, to the house on Shannon Drive and the office on Moreland Avenue. Our review of the record found no evidence to the contrary. Thus, Lucas "for compensation, contract[ed] to . . . personally or by others perform[] . . . the construction or improvement of, addition to, or the repair, alteration, or remodeling of any . . . building, . . . for use by the owner or by others or for resale to others." OCGA § 43-41-2. Accordingly, he was a contractor as defined in OCGA § 43-41-2, and was required to have a license under OCGA § 43-41-17 (a). As stated above, the evidence presented at trial showed that Lucas, as a matter of law, did not qualify for the exemption in OCGA § 43-41-17 (g). Thus, Lucas was barred from bringing this action by OCGA § 43-41-17 (b), and the trial court erred by not granting Appellants' motion for a directed verdict.

2. Because of our conclusion in Division 1, we need not decide whether the trial court erred in denying Appellants' motion for summary judgment.

*Judgment reversed. Doyle, P. J., and Markle, J., concur.*